## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CARMEN HOLIDAY                              )
                                           )
                  Plaintiff,               )
                                           )    No.  05 C 4514
          v.                               )
                                           )    HONORABLE DAVID H. COAR
CITY OF CHICAGO, a municipal               )
corporation; CORTEZ TROTTER,               )
Commissioner; MARK EDINBURG,               )
Commander; JOHN HARDING, Field             )
Officer; AND OTHER UNKNOWN                 )
INDIVIDUALS                                )
                                           )
                  Defendants.              )

## MEMORANDUM OPINION AND ORDER

Before this Court are defendants City of Chicago, Cortez Trotter, Mark Edinburg's

("Defendants") motion for summary judgment against plaintiff Carmen Holiday ("Plaintiff" or

"Holiday"), Defendant Harding's motion for summary judgment against Plaintiff, and Plaintiff's

motion for summary judgment against all defendants.  For the reasons set forth below, Plaintiff's

motion for summary judgment is DENIED, Defendant Harding's motion for summary judgment

is GRANTED, and Defendants City of Chicago, Cortez Trotter and Mark Edinburg's motion for

summary judgment is GRANTED in part and DENIED in part.

## I.    FACTS

Plaintiff Carmen Holiday ("Plaintiff") is employed as a paramedic-in-charge with the Chicago Fire Department ("CFD").  Plaintiff is a black female.  Defendant City of Chicago ("the City") is a municipal corporation that conducts business in the State of Illinois and employs more than 15 individuals.

**The Chicago Fire Department**

The CFD includes an Emergency Medical Services unit ("EMS") in which Plaintiff was employed.  The chain of command in the EMS is as follows: paramedic, paramedic-in-charge ("PIC"), field officer, ambulance commander, assistant deputy chief paramedic ("ADCP"), deputy chief paramedic ("DCP") and assistant deputy fire commissioner.  Members of the CFD may be assigned to one ambulance and take details to other ambulances.  A detail is a temporary assignment from one company to another ambulance.

CFD members are required to follow Department's internal rules as well as the City's personnel rules.  A member of the CFD who fails to follow the CFD's general orders or the City's personnel rules may be subject to discipline.

The City and CFD have anti-discrimination policies that prohibit discrimination and harassment against its members, and set forth procedures for reporting and processing discrimination and harassment complaints.  General Order 93-018 allows an employee to make a written complaint to his or her supervisor, or to the CFD's Equal Employment Opportunity officer.  CFD follows the City's sexual harassment policy, which prohibits sexual harassment in the workplace.

**Plaintiff's Employment with the CFD**

Plaintiff began working for the CFD on June 1, 2000. Plaintiff was assigned to Ambulance 52 from approximately July or August 2000 through September 2001. Plaintiff held the position of paramedic while she worked on Ambulance 52. During July 2000 and September 2001, John Harding was the field officer assigned to Ambulance 52, John Constantini was the ADCP, and Patricia Ciara was the DCP.

In September 2001, plaintiff voluntarily transferred to Ambulance 30, working under Field Officer Michael Cecich, ADCP Kevin Roche, and DCP Kevin Sullivan. In November 2003, Plaintiff was promoted to PIC. Plaintiff continues to work for the CFD as a PIC and remains assigned to Ambulance 30.

On or about March 26, 2004, Field Officer Patrick M. Kelly delivered to ADCP Roche a letter in which he stated, "Carmen Holiday, of African-American ethnicity, has on several occasions approached me...to discuss experiences she has encountered while employed as a Paramedic and a Paramedic in Charge within the EMS District Five...In general and in specific, I have come to identify that this employee may well have been the victim of racial discrimination, while in the performance of her duties, by other members fo the Chicago Fire Department with whom she has been charged to serve."("the Kelly Memo"). On or about March 26, 2004, Roche and Sullivan met with Kelly to discuss the Kelly Memo.

In September 2004, Plaintiff went to the Internal Affairs Division ("IAD") and spoke with Investigator Barbara Bennett about feeling harassed. On or about October 10, 2004, Plaintiff met with Bennett and CFD Attorney, Mary Robinson and filed a complaint of racial

harassment with the IAD, and IAD investigated Plaintiff's allegations.  The IAD issued a 26 page report and concluded that plaintiff's allegations of racial harassment were not sustained.

**Sexual Harassment / Hostile Work Environment**

Plaintiff alleges that during September 2000, an unnamed, white male co-worker touched the Plaintiff's back inappropriately.  Plaintiff testified that he slapped her on the back three times within 24 hours, but she did not think the co-worker was making sexual advances toward her.  Shortly after, Plaintiff had a conversation with Harding at the back of an ambulance, during which she felt that Harding threatened her to not file a complaint against the co-worker who slapped her in the back.  Plaintiff did not intend to, nor did she, make a complaint against the co-worker.

Plaintiff believes she was subjected to inappropriate sexual conduct when a white, male firefighter kissed her on the cheek once in 2001.  Plaintiff told her husband, Mark Holiday, who also works with the CFD, about the incident, but did not complain to anyone else at the CFD.

Plaintiff testified that once between 2000 and 2001, a white, male engineer said, "I have to clean out pipes" in her presence.  Plaintiff believed the comment was sexual in nature.  Plaintiff did not file a complaint or otherwise notify the CFD of this incident.

Plaintiff claims she has been called derogatory names based on her gender, but she does not recall specific names, who made them, or when the comments were made.

**Racial Harassment / Hostile Work Environment**

Plaintiff alleges she was verbally harassed and told she was incompetent, she was called a "bitch," and was regularly subjected to verbally abusive and insulting language by superiors, co-workers, and subordinates.  Plaintiff claims that "20 or more" co-workers ignored her and

-4-

spread false rumors about her. Between 2004 and 2005, CFD members spread rumors that Plaintiff had taken pictures with her camera phone of Engine 101 firefighters playing poker; Plaintiff had "an attitude" and could be condescending; Plaintiff was friends with Commissioner Trotter and attended the same church he attends, and that Plaintiff had been fired. Co-workers also spread false rumors verbally and on the CFD's unofficial website about the Plaintiff.

While working with Ambulance 30, unidentified firemen would be "nasty" towards her, refusing to assist Plaintiff with patient care and carrying equipment. Plaintiff believes the fireman catered to white female paramedics and assisted them in their duties.

Plaintiff claims that Cecich stood over her, and gave her mean and demeaning looks. Some white paramedics had Cecich's cell phone number, but Plaintiff did not. Plaintiff believes that after she became a PIC, Cecich encouraged the paramedics under her supervision to be "subordinate" by allowing them to call him on his cell phone when they had disputes with the Plaintiff.

Plaintiff was given a double detail, a procedure that is almost never undertaken. Plaintiff testified that on more than one occasion, she was told by other co-workers that a co-worker or supervisor did not want to work with her because she was a black woman.

**Race and Gender Discrimination**

On December 7, 2000, Harding initiated a disciplinary action against plaintiff for allowing a candidate EMT to receive medical supplies. In addition, Harding instructed her to drive faster on an ambulance run, and directed her to sweep the apparatus floor by herself.

When Plaintiff was with Ambulance 52, she had joined the "food club", but occasionally would return from duty to find that there was not enough food for her or that the food was not

kept in edible condition. Four of the five PICs that plaintiff identified working with are of a race different than plaintiff's and three are male. Between August 2000 and September 2001, Plaintiff believes paramedic Jason Peace discriminated against her by intentionally relieving her an hour late.

After Plaintiff transferred to Ambulance 30, in September 2001, Cecich demanded that she agree to take details by signing Form 2. Cecich also said to her, "whatever happened to you up north, stays up north", referring to her problems with Ambulance 52. Pltf. Depo. p. 270-72.

Daily assignments are generally communicated to members of the CFD via a mobile data computer ("MDC"). Cecich used the MDC to give daily assignments. Cecich did not give Plaintiff her assignments through the MDC, but gave her verbal assignments. He sometimes failed to give her CFD paperwork, such as updates to general or administrative orders or trade requests.

On March 4, 2004, Plaintiff failed to attend a mandatory continuing medical education class ("CME") class. Plaintiff received an oral reprimand. On April 13, 2004, Plaintiff failed to attend another mandatory CME class. On October 8, 2004 Plaintiff received an written reprimand. Plaintiff believed these were "unfair." Her husband, who also worked for the CFD and missed the CME classes, was not disciplined.

On May 5, 2004, the employer of a patient called to complain that Plaintiff had been rude and unprofessional, and had failed to render proper treatment to the patient. On May 2, 2005, Plaintiff received notification that she would serve an 8 hour suspension, and served it on May 26, 2005. A patient complaint was filed against PIC Anthony Behland (white male) and paramedic Mark Holiday (black male) in 2001 or 2002, and they were not disciplined.

Complaints against PIC Ritchie Biel (white male), paramedic Mary Hallock (white female), and commander Howie Kravitz (white male) for being rude and rendering improper treatment had been filed, but these employees were not disciplined. Hallock was working under the same supervisors as the Plaintiff, and Behland and Holiday had two overlapping supervisors with Plaintiff.

On August 25, 2004, Plaintiff placed a Westec miscroslate computer on the back of a stretcher in her ambulance, and the screen cracked. On December 31, 2004, Plaintiff received notification that she would serve an 8 hour suspension, which she served on January 20, 2005.

On March 25, 2005, Plaintiff reported to Little Company of Mary Hospital, complaining of asthma. On March 28, 2005, Plaintiff called the Medical Section of the CFD to advise that she was off work. Medical Section Commander Edinburg instructed Plaintiff to report to the Medical Section on Tuesday, March 29, 2005. Plaintiff did not have a medical doctor's directive saying that she was unable to return to duty. Edinburg ordered Plaintiff to return to work. Plaintiff refused. Plaintiff received notification of a 15 day suspension on August 30, 2005. Plaintiff has not yet served the suspension.

**Procedural**

On March 28, 2005, Plaintiff filed a claim with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race and sex, beginning in April 2002, and retaliation in March 2004. The EEOC issued Plaintiff a right to sue letter on May 9, 2005.

On August 8, 2005, Plaintiff filed a complaint against the City, CFD Commissioner Cortez Trotter, CFD Commander Mark Edinburg, CFD Field Officer John Harding, and other unknown individuals. Plaintiff brings her claim under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §1981, 42 U.S.C. §1983, 42 U.S.C. §1985(2), and Illinois state law.

Plaintiff sues Trotter in his official capacity, Edinburg in his official and individual capacity, and

Harding in his official and individual capacity. Plaintiff did not serve Edinburg personally with

summons and complaint.


## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue

of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P.

56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*,

367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable

factfinder could find for the nonmoving party, based on the record as a whole. The court does

not weigh the evidence and it does not make credibility determinations. Instead, the court makes

all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod.,

Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a

party fails to present proof on an essential element of his or her case, then all other facts become

necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).


## III.    ANALYSIS

**Defendants Trotter, Edinburg and Harding**

Defendants move to dismiss Trotter and Edinburg in their official capacities, because this

constitutes duplicative filing. The Seventh Circuit has found that "an official capacity suit is the

same as a suit against the entity of which the officer is an agent." *DeGenova v. Sheriff of DuPage County,* 209 F.3d 973, 975 (7th Cir. 2000). Naming a government employee in his "official capacity" signals that plaintiff seeks to recover from the government entity itself. *Ky. v. Graham*, 473 U.S. 159, 165 (U.S. 1985). Because the City of Chicago is named as a defendant, naming Trotter and Edinburg in their "official capacities" as City employees is duplicative. Defendants Trotter and Edinburg are dismissed in their "official capacities."

Further, Defendants argue that, while Edinburg was named as a Defendant in his individual capacity, he was not personally served. In order for the court to have personal jurisdiction over the defendant, there must be a "valid service of process." *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297 (7th Cir. 1991). Actual notice of the lawsuit is not sufficient, but rather the defendant must be properly served in accordance with Federal Rules of Civil Procedure 4(e). *Id.* Because Edinburg was not properly served, and Plaintiff makes no explanation in her response, Edinburg is dismissed as a defendant.

For the same reasons as those stated for Edinburg, Harding is dismissed as a defendant as well. Harding's motion for summary judgment is granted.

**Statute of Limitations**

Plaintiff's claim against defendant City of Chicago ("Defendant") are not time-barred. In general, actions that fall outside of the statute of limitations as stated above are time-barred. However, the "continuing violations" doctrine allows certain allegations outside of the statutory period, provided that they are a "series of separate acts that collectively constitute unlawful employment practice, and some of the component acts of hostile work environment or retaliation occurred within the filing period. *AMTRAK v. Morgan*, 536 U.S. 101 (U.S. 2002). In *Morgan*,

the Supreme Court differentiates between "discrete acts,"which are actionable only if they occurred within the proper time period, and "continuing violations," such as hostile work environment and retaliation, which by "their very nature involves repeated conduct." *Id.* at 115. These continuing violation allegations allow incidents outside the statutory period to be considered in proving the claim. *Id.*

Plaintiff's allegations of a practice of disparate treatment, hostile work environment, and retaliation based on race and sex discrimination, qualify as "continuing violations" of employment practice. Plaintiff alleges that after complaining to Field Officer Kelly, a legally protected activity, she was discriminatorily issued at least three adverse disciplinary actions between April 1, 2004 and November 15, 2004: (1) a one-day suspension on May 26, 2005, (2) an oral reprimand on or about August 1, 2004, and (3) a written reprimand on or about October 8, 2004. Further, Plaintiff received disciplinary action on December 31, 2004 and March 29, 2005. Plaintiff claims each followed a legally protected complaint regarding harassment and discrimination in the workplace. Plaintiff filed an EEOC complaint on March 28, 2005. Title VII covers allegations that fall within 300 days before this date, such that any discrete act before June 1, 2004 is time-barred. In this case, the August 1, 2004, October 8, 2004, December 31, 2004 and March 29, 2005 allegations all fall within the statutory period.

The discriminatory acts of co-workers and supervisors alleged by Plaintiff from September 2000 until present may be considered a "continuing violation"–part of the same alleged discriminatory practice as those disciplinary actions that fall within the statutory period. Plaintiff believes that she was harassed and retaliated against by Field Officer Cecich in continuation of Harding's actions. Plaintiff states that she was retaliated against because she was

"an African-American female and the pattern was already set forth in the previous district....[other officers] continued that pattern...and picked up where John [Harding]...left off." Defendants' Statement of Additional Facts, ¶ 12. Plaintiff maintains she endured continuous harassment between September 2001 through 2003 from Cecich, among others, who denied her verbal assignments, relevant paperwork, and encouraged insubordination from those under her. Further, Plaintiff claims that between 2004 and 2005 she continued to be retaliated against and treated differently by co-workers, in a continuous unlawful employment practice, including those acts which fall within the statutory period mentioned above. Because these acts of disparate treatment, hostile work environment, and retaliation are reasonably continuous with those that fall within the statutory period, Plaintiff's claims are not time-barred. Defendant is not entitled to summary judgment on the grounds that Plaintiff's allegations are time-barred.

**Title VII Race And Sex Discrimination**

Disparate treatment based on race and gender are actionable under Title VII, if the plaintiff can establish that she has been the "victim of intentional discrimination." *Bruno v. Crown Point*, 950 F.2d 355 (7th Cir. 1991). The plaintiff may either offer direct proof of discrimination, or rely on indirect evidence, using the McDonnell Douglas burden shifting method of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (U.S. 1973). Under the McDonnell Douglas method, plaintiff must first establish a prima facie showing of discrimination by a preponderance of the evidence. *Id.* Second, if the plaintiff is successful, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Third, if the defendant satisfies his burden, the plaintiff must then

show by a preponderance of the evidence that the legitimate reasons stated by the defendant were not its true reasons, but were pretext for discrimination. *Id.*

Defendant asserts that the Plaintiff's record is void of any direct proof of discrimination. Plaintiff does not oppose this in its response. The court finds no evidence of direct proof, and will proceed using the McDonnell Douglas analysis.

### A.    Prima Facie Case

A plaintiff establishes a prima facie case for race and/or sex discrimination by showing (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605 (7th Cir. 2001). To survive a motion for summary judgment, a plaintiff must prove, or show that there exists a genuine issue of material for, each of the four prongs. *DeLuca v. Winer Indus.*, 53 F.3d 793 (7th Cir. 1995). Defendant acknowledges that Plaintiff falls within a protect class, but assert that Plaintiff cannot establish the remaining three prongs in the test.

Defendant motions for summary judgment on the grounds that Plaintiff cannot establish that she performed her job satisfactorily, as required by prong (2) of the McDonnell Douglas test. Defendants argue that Plaintiff did not perform her job satisfactorily because she made several mistakes on the job, including allowing an EMT candidate to receive medical supplies, mishandling the Westec microslate, engaging in rude and unprofessional behavior, failing to render appropriate medical care, refusing to follow direct orders, and failing to attend mandatory CME classes. The plaintiff, however, was promoted during her employment, she received

-12-

evaluation ratings that were "standard" and with "no deficiencies," and claims she had received positive feedback from co-workers. It is questionable why an employee who was not meeting an employer's expectations would be promoted. Further, the Plaintiff argues that an EMT candidate is allowed to receive medical supplies, that she failed to follow a direct order because she was suffering from a severe asthma attack, and that she requested to reschedule the CME classes because she would be out of town. There exists a genuine issue of material fact as to whether the Plaintiff was performing her job satisfactorily.

Defendant motions for summary judgment on the grounds that Plaintiff cannot show she suffered an adverse employment action. Defendant asserts that a "mere inconvenience" is not sufficient to satisfy prong (3) of the McDonnell Douglas test. *Hilt-Dyson v. City of Chi*., 282 F.3d 456, 465 (7th Cir. 2002). Reprimands and transfers do not necessarily qualify as causing "substantial change in benefits" to the Plaintiff's employment, as required for a prima facie showing. *Rhodes v. Ill. DOT*, 359 F.3d 498 (7th Cir. 2004). However, defendant acknowledges that suspensions may be considered adverse employment actions, and Plaintiff has been issued two suspensions. As such, there remains a genuine issue of material fact as to whether the Plaintiff has suffered an adverse employment action.

Defendant motions for summary judgment on the grounds that Plaintiff cannot show there were similarly situated employees who were treated more fairly, as required by prong (4). In determining whether two employees are similarly situated, a court must look at all relevant factors, and on the context of the case. *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 617 (7th Cir. 2000). In disciplinary cases, where a plaintiff alleges that she was disciplined more harshly than other similarly situated employees, the Seventh circuit has held that the plaintiff must show

that "she is similarly situated with respect to performance, qualifications, and conduct." *Id.* This often includes showing that the employees were under the same supervisor, were subject to the same standards and engaged in similar conduct. *Id.* However, "an employee need not show complete identity in comparing himself to the better treated employee...he must show substantial similarity." *Id.*

The Plaintiff bases her prima facie case primarily on comparing herself to five employees: Anthony Behland (white male), Ritchie Biel (white male), Mark Holiday (black male), Mary Hallock (white female), and Howie Kravitz (white male). A patient filed a complaint in 2001 or 2002 against PIC Behland and paramedic Mark Holiday, and neither received discipline. Plaintiff claims this is more favorable treatment, because she did receive a suspension from a patient complaint. Behland is similarly situated with the Plaintiff. He holds a similar position (PIC) as the Plaintiff, indicating they were engaged in similar conduct and standards. Further, they were under two of the same investigative supervisors (Roche and Sullivan). Although Mark Holiday is a paramedic, not a PIC, he is also under Roche and Sullivan, and engages in similar conduct on the job. Defendant argues that the difference in position (paramedic v. paramedic in charge) disqualifies Mark Holiday to be a similarly situated employee as the Plaintiff. However, job title alone is not controlling; we must also look at the performance, conduct, supervisors, and standards. Mark Holiday went with Behland to a patients home, and engaged in the similar activities as Behland, who is in the same position as Plaintiff. They share the same supervisors and were both charged with the same complaint, suggesting a similar standard of conduct and performance. For these reasons, there is a genuine issue of material fact as to whether Mark Holiday is "similarly situated" as the Plaintiff.

Because Behland and Mark Holiday had similar performance, conduct, and supervisors as the Plaintiff, and did not receive disciplinary action upon a patient complaint, a reasonable jury may find that they are similarly situated employees who received favorable treatment.

For the same reason as Mark Holiday, a reasonable jury may find paramedic Hallock to be not identical, but sufficiently similar, to the Plaintiff in conduct, performance and supervisors (Cecich, Roche, and Sullivan). Statement of Undisputed Material Facts ¶ 66-67. Further, Beil is similarly situated because he is also a PIC working under Cecich, Roche and Sullivan, just like the Plaintiff. It is unclear from the evidence presented what the standard and performance of a "ambulance commander", such as Kravitz, entails. Plaintiff alleges that Hallock, Beil and Kravitz all had complaints against them for being rude and providing improper treatment to patients, but they were not disciplined. Because the Plaintiff was disciplined for being rude and providing improper treatment, Plaintiff claims they received favorable treatment. Although the evidence does not support Kravitz as a similarly situated employee, there is a genuine issue of material fact as to whether Hallock and Beil may be considered similarly situated employees who received favorable treatment.

For the foregoing reasons, the Defendant is not entitled to summary judgment on the grounds of Plaintiff's failure to meet the prima facie case.

**B.** **Pretext**

Defendant motions for summary judgment on the grounds that Plaintiff cannot show pretext. In order to successfully argue a disparate treatment claim under Title VII, plaintiff must show "proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931

(7th Cir. 1996). When a plaintiff establishes a prima facie case, and the defendant meets his burden of production of a non-discriminatory reason for the adverse employment action, the plaintiff "must demonstrate that the nondiscriminatory explanation of the employer is pretextual." *Id.* A plaintiff may successfully prove pretext by showing: "(1) Defendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) . . . the reason stated was insufficient to warrant the [adverse job action]."

Defendant claims that Plaintiff cannot show pretext because the City had a legitimate reason for its actions. Defendant argues that Plaintiff admits she allowed the EMT candidate to accept medical supplies and admits disobeying Edinburg's orders to return to work. Plaintiff asserts that allowing EMT candidates to accept medical supplies is not forbidden, and the reason why she did not return to work was because she was suffering a severe asthma attack. Under these circumstances, Plaintiff argues that suspension was not appropriate, and Defendant's legitimate reasons are merely pretext for racial and sexual discrimination. Defendant also claims that plaintiff's discipline for rude and unprofessional behavior was based on a citizen complaint. Plaintiff argues, as mentioned above, that similarly situated employees (who were white and/or male), who also received complaints for rude and unprofessional behavior, were not disciplined. Plaintiff asserts this favorable treatment demonstrates pretext. Because of these disputes, there remains a genuine issue of material fact as to the motivation of the Defendant, such that a reasonable jury may find for the Plaintiff.

For the foregoing reasons, Defendant is not entitled to summary judgment for the Title VII race and gender discrimination claim.

**Title VII Hostile Work Environment**

-16-

**A.    Hostile Work Environment Based on Sex**

In order to establish a Title VII hostile work environment claim based on sex, a plaintiff must demonstrate that: "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [the individual's] sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002).  To prove a "hostile work environment," the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Wyninger v. New Venture Gear, Inc*., 361 F.3d 965, 975 (7th Cir. 2004).  Further, "in determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work."

Defendant motions for summary judgment on the grounds that the Plaintiff cannot prove its hostile work environment based on sex claim.  Surprisingly, the Plaintiff gives no response to Defendants' motion for summary judgment for hostile work environment.  Plaintiff alleges no facts in its response brief in opposition to Defendant's motion.  Instead, Plaintiff leaves it to the court to dig through reams of deposition transcripts and various statements of facts, or to rely on Defendants' presentation of the facts, to find the relevant evidence that Plaintiff should have provided in the response.

Based on the evidence presented, the Plaintiff has not provided sufficient facts for a reasonable jury to find in its favor on hostile work environment based on sex. We begin with the first prong, where the plaintiff must "be subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature." The Plaintiff has acknowledged that she did not consider the incident with the unidentified white, male co-worker, taking place in September 2000, sexual in nature. Plaintiff's Dep., Defendant's Exhibit A, p. 109-110. Further, Plaintiff alleges that co-workers called her names and spread rumors about her, but the Plaintiff does not remember what they said, and there is no evidence to suggest that their remarks were sexual in nature. Plaintiff claims that Cecich "continued [a] pattern" of sexual harassment, and "picked up where John [Harding]...left off." Defendants' Statement of Additional Facts, ¶ 12. However, Plaintiff alleges that Cecich harassed her by giving her daily assignments verbally instead of in writing, and sometimes not giving her the required paperwork. *Id*. There is nothing sexual in nature about giving verbal directions and failing to provide Plaintiff with proper paperwork. This same reasoning applies to Roche, who Plaintiff claims did not investigate her complaints, and Sullivan, who Plaintiff alleges investigated a missing stethoscope in her ambulance. These facts do not give rise to a claim of hostile work environment based on sex.

Plaintiff also allege sexual harassment when a fireman kissed her on the cheek, and a male engineer said "I have to clean out pipes," which Plaintiff perceived to be sexual in nature. Neither of these harassers are "supervisors" as required by prong (4) that there is a basis for employer liability. An employer's liability for hostile work environment based on sexual harassment requires that the "harasser [be] the victim's supervisor" and not "merely a co-

employee." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002). A supervisor has the power to "hire, fire, demote, promote, transfer, or discipline an employee." *Id.* Because Plaintiff brings this charge against the City, in order to find vicarious liability, the alleged harassment must be performed by a supervisor. However, if the harassment is not performed by the supervisor, the employer is liable "only when the employee shows that his employer has "been negligent either in discovering or remedying the harassment." *Id.* at 356. Title VII does not expect management to be aware of every case of harassment, and therefore "notice or knowledge of the harassment is a prerequisite for liability." *Id.* Plaintiff has stated that she did not file a complaint for either of the above incidents, and only told her husband about the kiss on the cheek. Further, Plaintiff's complaint to the IAD was for racial discrimination only. Thus, there is no evidence to support employer notification, and Defendant cannot be held liable.

Finally, Plaintiff claims that her interaction with Harding in September 2000 was hostile and intimidating based on her sex. If Harding's actions were part of a "continuous violation" for sexual harassment, it may be considered to develop the claim. However, as discussed above, standing alone, the September 2000 incident is time-barred. Further, even if it were allowed in, a single act of intimidation that does not involve sexual advancement will not pass the objective standard for a hostile work environment claim. Thus, based on the evidence presented, no reasonable jury could find for the Plaintiff on hostile work environment based on sex.

For the foregoing reasons, Defendant is entitled to summary for the hostile work environment based on sex claim.

**B.      Hostile Work Environment Based on Race**

To state a claim for a hostile work environment based on race, a plaintiff must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021 (7th Cir. 2004). Plaintiff must meet both the objective and subjective standard, as discussed above for sexual harassment. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004).

Plaintiff alleges that she was verbally harassed and told she was incompetent, she was called a "bitch," and was regularly subjected to verbally abusive and insulting language by superiors, co-workers, and subordinates. Plaintiff claims that her authority to supervise her subordinates was undermined by Field Officer Cecich, she was issued multiple suspensions and reprimands, and was also given a double detail, a procedure that is almost never undertaken. Plaintiff believes these were acts of unwelcome harassment. Defendant claims these were valid reprimands and harmless language. There appears to be a genuine issue of material fact as to whether Plaintiff was subject to unwelcome harassment.

Plaintiff brought these issues to the attention of supervisor Patrick Kelly, who wrote a letter notifying his superiors of possible racial discrimination on or about March 2004. Plaintiff also complained to Barbara Bennett, Defendant's Internal Affairs Supervisor. Kelly wrote in his March 26, 2004 letter that Plaintiff was "in a state of moderate to serious state of duress" and that he has "come to identify that [Plaintiff] may well have been the victim of racial discrimination, while in the performance of her duties." Kelly gives details about the harassment Plaintiff faced, such as receiving a double detail. Kelly writes that a receiving a double detail

(twice transferred during assignment) is"the farthest thing from standard" and that he believes Plaintiff "was double detailed because of her race." Kelly's Affidavit, Plaintiff's Exhibit J. The Plaintiff's own allegations, combined with Kelly's affidavit, creates a genuine issue of material fact as to whether the harassment was based on race.

Unlike the sexual harassment issue, the Plaintiff in this case did bring racial discrimination to the attention the employer by complaining to Kelly and Bennett. Thus, the employer may be held liable for the environment created by the actions of not only supervisors, but also co-workers. Further, Plaintiff claims that "20 or more" co-workers ignored her and spread rumors about her, creates a genuine issue of material fact as to the severity and pervasiveness of the harassment. Defendant's Statement of Additional Facts, ¶ 11. Plaintiff was told by co-workers that other co-workers did not want to work with her because she was a black woman. Plaintiff claims that while firemen generally catered to white femal paramedics, assisting them in their duties, they were "nasty" towards her and refused to help her carry equipment. Questions surrounding the severity and frequency of Plaintiff's alleged harassments create a genuine issue of material fact for prong (3) of the hostile work environment based on race test and the objective standard test.

Notice was brought to the employer, and after "lengthy investigation", the IAD concluded that Plaintiff was not subject to racial harassment. Plaintiff challenges this remedy as negligent. Based on the facts presented, there remains a genuine issue of material fact as to whether employer was negligent in it's remedy (or lack there of), such that a reasonable jury could find for the Plaintiff on the issue of hostile work environment based on race. Thus, Defendant is not entitled to summary judgment on this issue.

**Retaliation**

Defendant motions for summary judgment on the grounds that Plaintiff did not allege a retaliation claim in her complaint, and therefore this claim should be waived and dismissed. In order for a claim to be waived, it must not only be absent from the complaint, but also from the EEOC claim. *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996). The Seventh circuit states:

> Plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint. In determining whether the current allegations fall within the scope of the earlier charges, the court looks at whether they are "like or reasonably related to" those contained in the EEOC complaint. If they are, the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it. *Id.*

In the present case, Plaintiff's EEOC claim states that Plaintiff believes she has been "discriminated against by Respondent because of [her] race, Black, and [her] sex, female, and have been *retaliated* against by Respondent in violation of Title VII" (emphasis added). The EEOC claim, which was attached to the Plaintiff's complaint, clearly contains language that communicates a retaliation claim. As such, Plaintiff's retaliation claim is not waived on the basis of failure to allege, and Defendant is not entitled to summary judgment for failure to allege the retaliation claim.

Plaintiff moves for summary judgment, under Title VII, Section 703 and 704(a), on the grounds that Plaintiff suffered retaliation for participating in a protected act. The Seventh circuit has articulated two (and only two) methods for the Plaintiff to obtain summary judgment for a retaliation claim under Title VII: (1) the Plaintiff may present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in

protected activity and as a result suffered the adverse employment action of which he complains. If the evidence is uncontradicted, the plaintiff is entitled to summary judgment; or (2) adapting McDonnell Douglas to the retaliation context, plaintiff must show that after filing the charge only she, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though she was performing her job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Plaintiff does not present direct evidence for retaliation in her motion. In Plaintiff's one-page motion for summary judgment, Plaintiff simply states that she engaged in protected activity on three separate occasions and received adverse employment actions as a result of each. There are no facts stated to support this argument in the Plaintiff's motion. The relevant dates of the alleged protected activity and adverse employment actions are not even included in the motion. Further, even if relevant dates are considered, temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken is not, in itself, sufficient for a summary judgment ruling. *Id*.

As for "other, similarly situated persons who are not within her protected category, have received preferential treatment," the same discussion from the Title VII disparate treatment analysis applies here. There remains a genuine issue of material fact as to whether there were similarly situated employees who were treated more favorably. As such, Plaintiff is not entitled to summary judgment.

For the foregoing reasons, Plaintiff is not entitled to summary judgment, and Defendant is not entitled to summary judgment for the retaliation claim.

**Section 1981 And 1983**

Under § 1981 or § 1983, Plaintiff needs to prove that (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). While Plaintiff alleges that Defendant's actions constitute harassment, there is no evidence that Defendant has municipal policies that directly promote sex or race discrimination. Defendant has a complaint procedure in place with the IAD, and Plaintiff's complaint was investigated the Chief Investigator and the CFD's attorney. There is no evidence that there is widespread practice of discrimination. Neither is there evidence that Commissioner Trotter, or anyone else with final, decision-making authority had a practice of hindering proper investigation, or in any other way promoting discrimination. The evidence presents a question of whether the investigation and remedy was negligent, as proper under a Title VII claim, but there is no evidence to support the contention that the city has policies or customs that promote race or sex discrimination.

For the foregoing reasons, Defendant is entitled to summary judgment for the section 1981 and section 1983 claims.

**Section 1985(2)**

To allege a section 1985(2), a Plaintiff must show: (1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages

to the plaintiff. *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). Defendant argues that Plaintiff has no evidence of conspiracy against her. Further, even if she did, there is no evidence of connection between her alleged office conspiracy, which she alleged began in 2000, and her involvement in a federal suit, which came years later. We agree. Defendant is entitled to summary judgment for the section 1985(2) claims.

**State Law Claims**

### A.    IIED Claim

Plaintiff's IIED claim is barred by the Illinois Human Rights Act ("IHRA"), where torts that are "inextricably linked to civil rights violations" must be adjudicated before the Illinois Human Rights Commission. *Sanglap v. Lasalle Bank, F.S.B.*, 345 F.3d 515 (7th Cir. 2003). A tort claim, including the IIED, is inextricably linked to a civil rights violation if there is no independent basis, such that the factual allegations in support of the plaintiff's civil rights claim are identical to those underlying her IIED claim. *Id.; Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 516 (Ill. 1997). In the present case, Plaintiff's IIED claim is inextricably linked to her discrimination and hostile work environment claim. Both allege hostile and outrageous behavior, using the same factual basis. As such, the federal court does not have jurisdiction over the state law IIED claim, which is more appropriately adjudicated before the Illinois Human Rights Commission. The IIED claim is dismissed from federal court.

### B.    Defamation

Section 2-107 of the Tort Immunity Act provides that "a local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of oral or written information." *Ramos v. City of Peru*, 775 N.E.2d 184, 188 (Ill. App. Ct. 2002).

The City of Chicago is a "local public entity" within the meaning of the Tort Immunity Act. Thus, the Plaintiff cannot charge the City of Chicago with defamation. .

Because the individual defendants are dismissed, the City of Chicago is entitled to summary judgment for the defamation claim.

**Punitive Damages From The City**

42 U.S.C. § 1981a(b)(1) precludes punitive damages under Title VII of the 1964 Civil Rights Act against a government or government agency. Plaintiff's punitive-damage claims against the City are dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED; Defendant Harding's motion for summary judgment is GRANTED; and Defendants City of Chicago, Commissioner Cortez Trotter and Commander Mark Edinburg's motion for summary judgment is GRANTED in part and DENIED in part.

Enter:


/s/David H. Coar

_____

David H. Coar

United States District Judge

Dated: **September 29, 2006**